et al. v. Miller Veneers et al. 2014-11-71 The patent office issued to my client, Capital Machine, six patents that teach how to significantly increase the amount of veneer that can be cut from logs. Defendant Miller Veneer does not deny that it infringed those patents, at least before 2009. Its own marketing documents conclusively show infringement. Miller even bragged that it increased its yield of veneer by 10 to 30 percent. It isn't this case about the interpretation of a flitch, the case has been here before, that issue has been decided. All the method claims and arguably even the apparatus claims depend on the definition of flitch. That's really what this case, this appeal is about, isn't it? I don't think so, Your Honor, but let me address the issue of the definition of flitch and particularly as it pertains to the apparatus claims. There is, the district court found that a flitch was an element of the apparatus claims and this is really important because if this court disagrees with that, for the reasons I'll explain, this court at a minimum should reverse the summary judgment and send this case back to the district court to evaluate summary judgment for the apparatus claims. This is because the district court granted summary judgment on the apparatus claims only because it believed a flitch was an element of the apparatus claims. But flitch is all over these apparatus claims, an apparatus for preparing a flitch, the flitch including a flitch holder. Flitch is throughout the apparatus claim. You can hardly separate the claim from the word flitch. I respectfully disagree, Your Honor. I will concede that the word flitch appears in each claim. You won't flinch from my statement about a flitch. I will not. And the district court specifically found that the reason a flitch was an element of each of the apparatus claims was because the word flitch appeared in those claims. Respectfully, that was a misstatement of the law. This is an issue of claim construction, which this court reviews de novo. The reason why a flitch is not an element of the apparatus claims is pretty simple. The flitch is the workpiece on which the apparatus acts. By definition, a workpiece is not a part of the apparatus, which acts on the workpiece. But without the flitch, the apparatus has no purpose. Is that right? That is correct. But that does not make the flitch an element of the apparatus claims. But doesn't it define how the flitch holder operates? It does not define how the flitch holder operates, no. The flitch holder, you know, it has, I think the claim with respect to repairing a flitch has a specific element called a flitch holder, I think. I can't really recite the element off the top of my head. But in general, for any apparatus claims that work on making something, the claim elements are directed towards the parts of the machine. What is actually made or what is actually operated on usually is not an element of an apparatus claim. In this case, it is no different. I would also like to discuss briefly why this court should revise the part of the definition of flitch requiring the taper to be at the butt end. There is a glaring inconsistency between what this court found the invention to be in the prior appeal and the definition of flitch. This court found that the invention involved a flitch having a taper between the two ends. In contrast, the current definition of flitch requires a taper only at the butt end. These two views are irreconcilable. If a flitch only has a taper at the butt end, it's not going to result in any increase in the amount of the veneer. Capital's patent teaches how to orient the body of the flitch so that any taper is moved so it's parallel with the knife. They disclose nothing about orienting the butt end of the flitch because you don't slice the veneer off the end of the flitch. You slice it across the length of the flitch, and this court found that in the prior appeal. We raised this issue about the butt end being an element of the definition of flitch in the last appeal, but this court never addressed it. That ambiguity revealed itself during the second summary judgment motion when it became necessary to apply the construction of flitch to the activities of Miller veneer. It's common for courts to revise claim constructions throughout a case, especially when ambiguities in a claim construction are revealed by applying the construction to an accused product. This case should be no different. The propriety of the butt end limitation is now before this court for a second time. The first time, this court did not address it, but this time it should. The first time, all you said was that the butt end wasn't necessary, but that wasn't the focus of the first appeal. The focus was on the tapering, correct? You're correct that it was the focus, but we raised, preserved might be another word, we objected to the inclusion of the term butt end in the first appeal. Remember, the term butt end doesn't appear anywhere in any of the six patents. The term butt end does not appear anywhere in any of the prosecution history for any of the patents. It was the prosecution history estoppel that was supposedly, or I guess this court found it was the rationale for amending or interpreting flitch. How the term butt end got into that definition still escapes me. It doesn't belong there, it doesn't make sense. The invention deals with cutting veneer across the surface between the ends, not from the butt end or not at the butt end. Did you ever argue the between the ends terminology to the lower court or this court the first time around? Yes, and the instances in which we argued it at the lower court are cited in the reply brief and I can give you the specific citation to that. It was argued during the Markman hearing, argued during the motion to reconsider the Markman hearing, and I can give you those citations perhaps on rebuttal. The final point I'd like to make is to discuss why the district court's resort to this supposed stipulation was error. It was the linchpin of the district court's decision as to why it construed capital's original summary judgment motion, but it was wrong for several reasons. First, for there to be a stipulation or judicial admission, it has to be clear and unequivocal. Here capital's statement was anything but clear and unequivocal. It referenced the term butt end and included the parenthetical as that term is understood without ever expressing what that understanding was. The summary judgment motion was expressly limited to certain devices and methods of Miller, not all devices and methods like the district court found. Moreover, the district court reinterpreted capital's statement in hindsight in view of this court's ruling that was issued 13 months later. There can't be any doubt that capital's original statement was limited to the 137 patent. When this court issued its prior opinion, this court ruled that the definition of flitch applies to all the patents. Well, what about the middle sentence where it says plaintiffs allege that Miller has cut veneer from untapered flitches, and then it also says without butt end, but clearly it says your allegations are that they use untapered flitches. Doesn't that end the inquiry? I mean, that's a factual stipulation. Put aside the fact that you said, you know, we're only stipulating as to certain devices. You did stipulate as a matter of fact that you only alleged cutting veneer from untapered flitches. But only as it applies to the 137 patent. Every patent is defined by claims that have certain elements. It's only a combination of all of those elements being present that allows a determination of infringement to be found. And for the 137 patent, the definition of flitch was dispositive with respect to that patent. But the statement is unequivocal. It says it only applies to the 137 patent. Moreover, if you look at most of the other patents, expressly require a tapered flitch. And Capital has consistently argued that those claims are infringed as well. This summary judgment motion cannot be reasonably construed to say that Capital was abandoning its claims of infringement directed towards tapered flitches. So you're saying as a matter of fact that they used tapered flitches? Yes. And their marketing materials prove that unequivocally, I believe. And they don't deny that they have used tapered flitches in the past. I would also point out one of the procedural issues is that after the last appeal, the court came back and amended our infringement contentions. And when we amended them, we withdrew our claim of infringement of the 137 patent. It was no longer before the court. And I would suggest that it was improper for the court to revie on this statement with regard to the 137 patent when infringement of that patent was no longer before the court. It was wrong for the district court to characterize Capital's machine statement as a stipulation or judicial admission. And therefore, the summary judgment should be reversed. We will save the remainder of your time if you like. Thank you, Your Honor. Let's just wait a minute. What about the apparatus claims? Okay. Let's talk about the apparatus claims. We believe that that issue has already been decided, that the apparatus claims also include a tapered flitch. And that's based upon a prior panel of this court looking at that issue and determining that flitch is found in all the asserted claims, including those apparatus claims. Now, our reading of the law is that's law of the case. So when it came back to the district court, they were required to apply that law. And they determined that, indeed, Capital had stipulated that all the defendants, not just Miller-Vaniers, but all the defendants use untapered flitches. And it also determined that this court had determined that flitches in each of the asserted claims in that term has to be construed consistently across all the patents. And so that's what the district court did. Based upon the stipulation that Miller-Vaniers and all the other defendants uses untapered flitches. Well, is it true that they only use untapered flitches? That is true. And I want to address a comment by Mr. Overhauser at this point in time. He says that we've never denied that we've infringed by using tapered flitches. And I want to explain what's going on there. Because since this case has been filed, we have not used tapered flitches. When he made his stipulation, we weren't using tapered flitches at that time. What he's referring to is deposition testimony and marketing materials that were used by my client between 2004 and 2007. During that period of time, there was an interference that had been provoked by Capital Machine with one of their applications in our issue patent. At the PTAB, we won that interference. And he appealed to this court, and this court reversed it. And that was, I think, in August or September of 2007. As soon as that reversal came down, my client stopped using tapered flitches and has not used them since that day. Now, Capital knew that, and he knows that. And they stipulated to get a – because they didn't like the claim construction. So they stipulated that we don't use tapered flitches. For purposes of finality? I think for purposes of being able to appeal that claim construction because they were going to get it reversed. And they didn't. And so they're stuck with it. And now they're still trying to get this court to, again, reconsider something that's already decided. That issue is law of the case. And they haven't given any reason for this court to reverse what it's already done. What about at the bus end? Well, their stipulation was that plaintiffs allege that Miller has cut veneer from untapered flitches and flitches without butt ends. That's two stipulations, untapered flitches and tapers without butt ends. That's the stipulation they made. And so when the court – when this court affirmed that claim construction, and when they stipulated that we didn't use untapered flitches, all the claims required tapered flitches. That's already been decided. So it was a pretty easy decision for the district court to just simply apply the facts that weren't in controversy to the law. We've got at least one element in every single claim that is not shown. So therefore, there's no infringement. What about the fact that the stipulation did only refer to a particular claim and a particular patent? Well, what it referred to – first of all, they said the stipulation that the plaintiffs use untapered flitches is pretty general. Pretty general statement. And so they said we don't infringe at least claim 23 of the 137 patent. So the key there is that they said that we don't use untapered flitches. So if we don't infringe that claim that requires a tapered flitch, then any other claim that requires a tapered flitch, we wouldn't infringe either. And that's logic that the district court used. The bottom line is that Capital made this stipulation because they didn't like the claim construction. And when this court upheld that claim construction, that became law in this case. So unless they can show some type of clear error resulting in injustice, and they haven't shown anything that can meet that standard, this court has to affirm what its prior panel did and what the district court applied to come to the conclusion that there is no infringement and this case is over. Now, the apparatus claims, again, I believe that Miller, Vaniers, and all the defendants believe that this court has already addressed that issue, that it's in there. And so, again, that became law of the case. But if you look at those apparatus claims, flitch is all over the place. And it's in the preambles, it's in the body of the claims, the body of the claim references get their antecedent basis from the preamble. But it still is not part of the apparatus, is it? The apparatus is for preparing a flitch and has a flitch holder, but not the flitch. He has a point, doesn't he? No, he doesn't. And here's why. The reference of flitch as an element in those claims defines the structure of that apparatus. Flitches are eight, ten feet long. They're several hundred pounds. And so when you start weaving in the apparatus with the flitch and determining locations of certain aspects of that apparatus, like the pin dogs, for instance, you're defining that structure. So his statement that they're structurally complete without reference to the flitch just isn't true. Because the invention doesn't make sense without putting in context and building that structure based upon something that's several hundred pounds long and eight to twelve feet. In other words, no flitch, the apparatus has no meaning. That's correct. In the terms of the way the patentee defined these claims, that's absolutely correct. And another good indicator that flitch is an element is, again, you go back to the prosecution history. Look at the prosecution history of the 938 patent. I mean, certainly the examiner and the patentee considered flitch an element. In fact, that was the way that the patentee was able to get that claim allowed in the first place. And it's an apparatus claim. It had to distinguish over a wheel. If you look at the wheel invention, and specifically if you look at figure six of the wheel invention, that's at A0200 of the record, it shows every element of claim one, which was claim 24 at the time of the 938 patent, except it doesn't show a tapered flitch. And the patentee said, the difference is my invention requires a tapered flitch, and wheel doesn't show tapered flitches. If you look further in, and I'm referring the court to A0173 and A0174 of the record, which is the response to the office action. In that response it says, the examiner has rejected claims 24 and 27 under 35 U.S.C. section 112, because claim 24, which is issued claim one, is vague and equivocal in that it left to question which element includes the veneer producing surface, the apparatus or the flitch. So clearly the examiner felt that the flitch was part of that invention. In response thereto, claim 24 has been amended to indicate clearly that the flitch includes the veneer producing surface. Certainly the applicant didn't argue that flitch wasn't an element of that claim. In fact, he told the examiner that the difference between my invention and wheel is tapered flitches. In conclusion, unless your honors have more questions, capital didn't like the claim construction and it needed a final judgment. So it stipulated that, by gosh, defendants don't use tapered flitches, they use untapered flitches. It got its final judgment, it appealed that claim construction to this court, and this court affirmed the district court, and sent it back down to the district court to determine if any of the claims had been infringed, and if any term was case dispositive. And that's what the district court did. And I would ask that this court affirm the district court again and uphold the finding of non-infringement. Thank you. Thank you. Mr. Swift, Mr. Overhauser has about three and a half minutes to rebut. Thank you, Your Honor. To respond to Your Honor's prior question about whether or not the issue of Mott-Ann was raised previously, that is discussed in our reply brief at pages 19 through 20. I note that Mr. Swift did not deny that Miller has not denied that it infringes the patents. And I would direct the court's attention to the appendix starting at page 743, so it can see for itself the promotional materials that clearly show that it is using tapered flitches. Is that current? No, this is from the sales that occurred prior to 2009. But that's consistent with what Mr. Swift said. It is consistent. But the point is that Miller does not deny, at the very minimum, they haven't denied infringing prior to 2009. Respond to the prosecution history disclaimer discussion, because as it relates to apparatus claims, you distinguished Weil because you said Weil didn't disclose the use of tapered flitches, and you said that that was critical to both the apparatus and the method claims. The way Office Amendment works is that you have a patent application with a gazillion claims. You start out writing the examiner and you say, here are all the elements that distinguish us from the prior art. But then you go through claim by claim and you explain which element is not present or is present in which claim. Not all claims have all elements. And if you look at the specific amendment, and this is on page 17 of our reply brief, it notes that the amendment that was made to what is now claim one of the 938 patent didn't have anything to do with tapered flitches. It had to do with amending the claim to add the limitation and to position the veneer producing surface for cutting. That was a limitation that was added to the component of dogs. So when Mr. Swift says that somehow this 938 patent was amended to add a tapered flitch to it, he's just wrong. It was amended to clarify the term dogs. Right, but that's an argument that you lost before. I mean, the decision that was drafted by Judge Moore that Judge Lori and I were on the panel, we specifically found that that was disclaimer and that that amendment did disclaim anything other than tapered flitches. What the court decided previously was that a flitch should be interpreted to include a taper. This court did not find previously that a flitch, in fact, was an element of the apparatus claims. That's the key distinction. Anything more, Mr. Popovic? Nothing more, Your Honor. Thank you very much. We'll take the case under advisement.